IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

**ANGELINA GONZALES**,

    Plaintiff,

v.

**BUCKEYE C, LLC d/b/a RIVERDALE REHAB AND CARE COMMUNITY OF BRIGHTON,**

    Defendant.

---

## COMPLAINT

---

COMES NOW the Plaintiff, ANGELINA GONZALES, by and through her attorney, Ralph G. Torres, hereby files her complaint against the Defendant by the allegations set forth below:

### I. JURISDICTION

1.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(4). This is an action authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12117(a) and the Colorado Anti-Discrimination Act, C.R.S. § 24-34-402(1)(a).

2.    The unlawful employment practices alleged herein were committed within the Judicial District of Colorado.

1

3. This Court has jurisdiction over the parties and claims set forth herein.

## II. PARTIES

4. Plaintiff, ANGELINA GONZALES, ("GONZALES") is a Hispanic Female who began her employment with Defendant in its Brighton, Colorado location in 2009. During her employment she held various positions most recently as the Community Relations and Director of Admissions until she was constructively discharged on June 9, 2020.

5. Defendant, BUCKEYE C, LLC d/b/a RIVERDALE REHAB AND CARE COMMUNITY OF BRIGHTON ("RIVERDALE") is a Colorado Limited Liability doing business under the trade name of Riverdale Rehab and Care Community of Brighton. At all times material hereto Defendant employed more than 15 employees.

6. At all times relevant to Plaintiff's claims, the following employees had the authority to impose conditions of employment: Patty Sanches, Vice President of Human Resources; Carly Bader, ("BADER") Nursing Home Administrator, Heather Barton H.R. at Riverdale Rehab, Daphne Bernstein at Vivage corporate, Cristal Collier at Vivage Corporate.

## III. ADMINISTRATIVE PROCEDURES

7. On or about October 23, 2020, Plaintiff timely filed her charge of discrimination with the Colorado Civil Rights Division ("CCRD") and Equal Employment Opportunity Commission ("EEOC") against Defendant alleging claims of Disability (physical), Retaliation and Constructive Discharge under the ADA and ADAAA.

8. EEOC and CCRD accepted the Charge and assigned it Charge No. 32A-2021-00093.

9. EEOC issued its Notice of Right to Sue dated May 4, 2021.

10. Plaintiff has timely and properly exhausted her administrative remedies.

11. All conditions precedent to the commencement of this lawsuit have been complied with by GONZALES.

## IV. GENERAL FACTUAL ALLEGATIONS

12. GONZALES began her employment with Defendant on or about December 16, 2009.

13. GONZALES occupied various positions with Defendant during her employment; performing her job duties satisfactorily.  At the time of her employment constructive discharge she was the Community Relations and Director of Admissions for Defendant.

14. On or about April, 2018, Plaintiff was diagnosed with Breast Cancer.

15. On or about April, 2018, Plaintiff informed Defendant that she was diagnosed with breast cancer and would be undergoing cancer treatments.

16. Plaintiff provided to Heather Barton, H.R. and BADER doctor notes, excuses for absences for each time she had to take doctor appointments, took chemo treatments and had side affects.

17. Plaintiff's office and workspace for Defendant was in an outside office trailer with no running water or restroom.  It had extensive water damage and continued to leak water through the windows and doors, was covered in mold, and was not remediated, despite requests by her and other employees.  These were toxic conditions, which often caused Plaintiff to cough, sneeze, make her eyes water and affect her breathing, all of which she was greatly concerned about affecting her ability to fight breast cancer.  She complained about her work environment but was

3

told it was "safe".

18. In the Winter of 2018; BADER was hired by Defendant to be the Nursing Home Administrator, and supervisor of Plaintiff.

19. Plaintiff had never received any job performance discipline from Defendant prior to BADER's hiring.

20. BADER immediately started treating GONZALES different and discriminatorily as compared to other similarly situated employees of Defendant.

21. On or about May 31, 2019, BADER placed Plaintiff on a Performance Improvement Plan ("PIP").

22. Plaintiff objected to the PIP telling BADER that she had never counseled her on the alleged problems noted in it, in fact the Point Click Care electronic software program she references was not even available at the time of her PIP because she was using another software called Enquire.

23. BADER would undermine Plaintiff's job duties and responsibilities. BADER would ignore Plaintiff's advice on "high risk" private pay patient admissions.

24. BADER accepted wine and candy in exchange for complex and costly referrals which came from her previous employees.

25. Plaintiff objected and complained about being placed on a PIP considering her disability, because the alleged reasons for job performance problems were related to her downtime from chemo treatments and extreme nausea and fatigue that persisted thereafter.

26. Nevertheless, Plaintiff successfully completed the PIP on or about July 31, 2019.

27. BADER continued to subject Plaintiff to heightened scrutiny of her job duties and

would intentionally develop systems to make it challenging to successfully perform her job.

28.     On or about January 6, 2020, BADER added permanent job duties to Plaintiff's role including accounts payable from Josselyn Penrod.  Plaintiff was forced to do all the resident shopping for the entire facility, reconcile all resident receipts for expenditures with funds in their trust accounts, stocking and purchasing cigarettes for the current smokers (quite a few).

29.     Plaintiff immediately expressed her concerns that she was being set up for failure after successfully completing her PIP.

30.     Plaintiff complained to BADER and Josselyn Penrod  about the additional duties and the stress and time commitments it would cost her, prohibiting her ongoing cancer treatments and taking away from her duties as the Community Relations and Director of Admissions.

31.     On January 24, 2020 Plaintiff emailed BADER stating that Josselyn is not helping with her with these additional duties, she is "getting slammed, being pulled in a million directions, getting behind, feeling overwhelmed" and continue to need help.

32.     BADER told Plaintiff that her current position as  Community Relations and Director of Admissions did not support a full-time role, even though it was a salaried position and Plaintiff was required to be on call with the Company phone 24/7.

33.     From January, 2020 to the date of her departure in June 9, 2020, Plaintiff repeatedly asked for help to perform these added job duties.  When she was unable to complete something, BADER and Josselyn Penrod would state to the team that "Angelina is unable to do this…so we will complete it", making her feel belittled and inadequate to her co-workers.

34.     Sometime in early 2020, Plaintiff tearfully requested from BADER to be demoted to a Certified Nurses Aide ("CNA") position which would reduce her workload and hours, and

provide flexibility for her to receive chemo treatments for her breast cancer. But BADER refused this suggestion.

35. Plaintiff requested an accommodation in her work schedule and work load to permit her to have time to receive her chemo treatments and the debilitating side effects it rendered to her.

36. Plaintiff told BADER that she was suffering serious emotional distress that was starting to be intolerable. She was overwhelmed, getting slammed, needed help and was getting behind. BADER responded that the facility was "under budget" and could not permit Plaintiff to reduce her hours or change positions if she wanted to keep full-time pay and benefits.

37. Plaintiff applied for the Business Office Manager position, but BADER stated she did not get the position because "Plaintiff was much like her and would not like a position dealing with all those numbers."

38. Plaintiff interviews on March 9, 2020 with the corporate Vivage office – Daphne Bernstein and Cristal Collier and was offered a position to transition into centralized admissions. However, the global COVID-19 pandemic hit and Plaintiff was told the position transition would have to be put on hold.

39. During the COVID-19 pandemic, Plaintiff would volunteer to work the floor as a CNA to support her team; however, BADER and some staff would deny her volunteer efforts stating because of her breast cancer, she was "autoimmune compromised" and could not.

40. Instead, Plaintiff's job duties and responsibilities were increased during the COVID-19 pandemic period for her to find new patients for intake and to complete additional job duties.

41. Plaintiff worked overtime in order to complete her job duties for which she was not compensated.

42. Plaintiff was forced to take phone calls form hospitals and corporate liaisons on Defendant's company phone after office work hours, on the weekends and holidays. She was "on call" 24/7.

43. Plaintiff took the admission paperwork home and placed shopping orders for residents online at home, if it couldn't get done at the office.

44. Plaintiff was forced to come into the office for new patient admissions after work hours and on the weekends during the COVID-19 pandemic - exposing herself to possible COVID-19 infection during a time when executive "stay at home" orders were in place.

45. Daphne Bernstein at Vivage corporate assigned Plaintiff to be the interim liaison for Platte Valley Medical Center, in addition to her all her other duties. Other liaisons for Defendant did not have to perform all the other duties as Plaintiff did in this role. BADER told Plaintiff she would contact the corporate office and try to get her a pay increase – but never did.

46. Plaintiff performed all the duties and responsibilities that BADER continued to add upon her in order to keep her health insurance which covered her cancer treatments.

47. As a result of Defendant's discrimination of Plaintiff, she was forced to delay her cancer treatments or risk losing her job.

48. Plaintiff's oncologist wanted to start her on another chemo medication called Nerlynx, however the side effects were severe and would require Plaintiff to have time off from work. Plaintiff's request for accommodation in her work load to receive these treatments was refused by Defendant.

49. Due to Plaintiff's overwhelming workload, and refusal for accommodation, she was unable to get the proper treatment she needed to fight for her life in battling breast cancer.

50. Even though the COVID-19 pandemic and restrictions were in full gear during the time period, with executive "stay at home" orders in place, BADER continued to tell Plaintiff that the facility was not "on budget", admissions were down. She had to continue going out into public to shop for all the residents, distribute goods accordingly, and risk her compromised autoimmune health from breast cancer.

51. Plaintiff started experiencing extreme anxiety and panic attacks. She would get tearful at work for no reason. On April 27, 2020 her physician diagnosed her with Generalized anxiety disorder, increased stress, insomnia and panic attacks.

52. Plaintiff's primary care physician started her on Cymbalta to help with these new physical and emotional symptoms which continued to exacerbate her ability to fight off the breast cancer treatments. Plaintiff had to delay her chemo treatments for cancer during this time.

53. On June 3, 2020 Plaintiff emailed BADER requesting help with matching the receipts for resident purchases, getting signatures for approval from the resident, and reconciling their each bank account. She cannot focus on getting "on budget" by turning over empty beds quicker with new resident admissions, if she has to do these other tasks.

54. BADER again infers that Plaintiff's 40 hour salary cannot be supported with admissions of residents down if she doesn't perform all these other duties. Plaintiff complains that through all the years of working for Defendant her job has never been threatened by the inability to get new resident admissions, especially during a COVID-19 pandemic situation.

55. On or about June, 2020, Plaintiff was forced by BADER to participate in a time

8

study to track her daily activities to see how "busy she was". No other similarly situated employee was required to participate in a time study as was Plaintiff.

56. Plaintiff had to document every single detail and action and task that she performed throughout the entire work day, every minute, every hour all day for a week. Doing so was the most stressful thing she ever had to do to prove her worth as an employee.

57. When Plaintiff looked back at the week's time study log, she realized how really busy she was. She only had 1 restroom break, ate her lunch at her desk, did not take the required breaks allowed by the Colorado Department of Labor and still had to take work home to complete so as to not fall behind in her duties for these multiple jobs.

58. On or about June 9, 2020, BADER assigned her even more duties to which she complained she could not handle due to her disability. BADER insisted that Plaintiff come in at 6 a.m. to meet with the nursing team and discuss why resident beds were not being made. Plaintiff was expected to now help make resident beds, that the CNAs, housekeeping and laundry employees were refusing to do.

59. BADER told Plaintiff she "wanted no other emails from her regarding not having time for additional tasks that she requested from me."

60. Plaintiff had no choice but to leave her employment with Defendant on this day after those instructions to preserve her health due to her breast cancer diagnosis and treatments, as well as the extreme anxiety and panic attacks she was experiencing.

61. Plaintiff wrote a letter to HR Patty Sanches on June 19, 2020 setting forth the chronology of her discrimination, being refused accommodation and her frustration in being constructively discharge after years of successful work performance, prior to BADER's arrival.

62. On June 25, 2020, Plaintiff emailed Patty Sanches in H.R. again regarding the accommodations she had requested for chemo and the help she needed for resident shopping that she had repeatedly and constantly asked BADER for, but was denied.

63. Plaintiff was unable to find similar employment following her constructive discharge.

64. Plaintiff was unable to continue her treatments for cancer following her constructive discharge.

## V. FIRST CLAIM FOR RELIEF
### (Disability Discrimination and Failure to Accommodate (Breast Cancer) – ADAAA)

65. The preceding allegations are incorporated by reference as it fully stated herein.

66. Defendant is an employer as that term is defined under the Americans with Disabilities Act, Pub. L. No. 101-336, 104 Stat. 328 (1990).

67. Plaintiff has a qualifying disability, breast cancer.

68. Defendant willfully and intentionally subjected Plaintiff to disability discrimination by assigning her additional duties which prevented her from seeking treatment for the cancer.

69. Defendant knew its actions violated ADAAA or it was recklessly indifferent in that regard.

70. Defendant refused to accommodate Plaintiff for her disability – breast cancer – and the chemotherapy and other treatments which she required, even though she requested the same. Every alternative Plaintiff suggested to her supervisor was rejected. Every request for

10

help was denied.

71.     Plaintiff was discriminated against because of her disability as compared to other similarly situated employees.

**72.**     As a direct and proximate result of the foregoing actions and conduct of Defendant, Plaintiff has suffered, and will continue to suffer, economic damages including loss of back wages, front wages, earnings, diminution of future earnings capacity, non-economic damages such as, but not limited to, mental anguish, inconvenience, attorney's fees, costs and expenses, and other damages to be determine at trial. Plaintiff claims compensatory and punitive damages for these losses and injuries under the ADAAA.

### VI. SECOND  CLAIM FOR RELIEF
**(Discrimination in Violation of the
Colorado Anti-Discrimination Act (Breast Cancer)  C.R.S. . § 24-34-402(1)(a)**

73.     The preceding allegations are incorporated by reference as it fully stated herein.

74.     Defendant is an employer as defined by C.R.S. § 24-34-401(3).

75.     Plaintiff is a member of a protected class of individuals based on disability.

76.     Plaintiff was an employee as defined by C.R.S. § 24-34-401(2) and at all times was qualified to perform the functions of her position.

77.     Defendant knew its actions violated CADA or was recklessly indifferent in that  regard.

78.     As a direct and proximate result of the foregoing actions and conduct of Defendant, Plaintiff has suffered, and will continue to suffer, economic damages including loss of back wages, front wages, and benefits, as well as non-economic damages including pain and

suffering, humiliation, mental anguish, and inconvenience, Plaintiff also seeks attorney's fees, costs and expenses, and other damages to be determined at trial under C.R.S. § 24-34-405.

## VII. THIRD CLAIM FOR RELIEF
### (Retaliation – ADAAA)

79. The preceding allegations are incorporated by reference as if fully stated herein.

80. Defendant's conduct in subjecting Plaintiff to the above-described adverse employment actions of threatened of losing her job after she complained about discrimination and not accommodating her requests for help with her additional duties are in violation of the ADAAA § 12112.

81. The effect of these statutory violations was to deprive Plaintiff of her rights and privileges enjoyed by persons who have --- engaged in activities protected by the ADAAA.

82. The statutory violations were intentional.

83. These statutory violations were willful and wanton and/or were done with malice or with reckless indifference to Plaintiff's federally protected rights.

84. As a result of Defendant's actions, Plaintiff has suffered damages to which she is entitled to recover.

## VIII.  FOURTH CLAIM FOR RELIEF
### (Retaliation – Colorado Anti-Discrimination Act
### C.R.S.§ 24-34-402(1)(e)(IV))

85. The preceding allegations are incorporated by reference as if fully stated herein.

86. Plaintiff engaged in protected activities by attempting to complain of the discrimination that she experienced in the workplace, both individually and because of her disability.

87. Defendant's conduct in subjecting Plaintiff to the adverse employment actions of being threatened of losing her job after she complained about the discrimination is in violation of C.R.S. § 24-34-402(1)(e)(IV).

88. Plaintiff further suffered an adverse employment action by being constructively discharged after she faced retaliation for voicing concerns of discrimination.

89. The effect of these statutory violations was to deprive Plaintiff of rights and privileges enjoyed by persons who have not engaged in activities protected by CADA.

90. These statutory violations were intentional.

91. These statutory violations were willful and wanton, and/or were done with malice or with reckless indifference to Plaintiff's statutorily protected rights.

92. As a direct and proximate result of the foregoing actions and conduct of Defendant, Plaintiff has suffered, and will continue to suffer, economic damages including loss of back wages, front wages, and benefits, as well as non-economic damages including pain and suffering, humiliation, mental anguish, and inconvenience. Plaintiff also seeks attorney's fees, costs and expenses, and other damages to be determined at trial. Plaintiff claims damages for these losses and injuries under C.R.S. § 24-34-405.

### IX. FIFTH CLAIM FOR RELIEF
**(Constructive Discharge because of disability – ADAAA)**

93. The preceding allegations are incorporated by reference as it fully stated herein.

94. During Plaintiff's employment with Defendant she was discriminated against because of her breast cancer disability by being subjected to working in a trailer facility which had mold and mildew present providing a physically and mentally toxic environment

considering her diminished immune condition.

95. Defendants actions by requiring her to perform additional job duties and responsibilities which violated the executive "stay-at-home" orders during the COVID-19 pandemic, threatened her health and safety by exposing her to the life threatening virus.

96. Defendant's actions by adding more job duties and responsibilities and requiring Plaintiff to perform them or risk losing her job, made it impossible for her to continue her chemotherapy treatments for her breast cancer and increased her risk of death as a result of her breast cancer diagnosis.

97. The working conditions perpetuated by Defendant against Plaintiff were so intolerable that she had no choice but to quit her employment. A reasonable person in the same circumstances would have considered these working conditions to be intolerable.

WHEREFORE, GONZALES prays that this Court enter an Order as follows:

A. Grant a permanent injunction prohibiting Defendant from engaging in any employment practices which violate Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12112, 12117(a) and the Colorado Anti-Discrimination Act, C.R.S. . § 24-34-402(1)(a).

B. Reinstate to GONZALES all benefits, wages, front and back pay, which were lost as a result of the discriminatory and retaliatory acts directed at him.

C, Reimburse GONZALES for all reasonable and necessary expenses incurred due to the discriminatory actions of Defendant.

D. Award GONZALES compensatory and punitive damages against Defendant in an amount to be determined at trial for the personal humiliation, severe emotional pain,

inconvenience, mental anguish and loss of enjoyment of life she has suffered due to the actions of Defendant;

      E.      Order Defendant to stop all retaliation against GONZALES for having asserted her rights under the ADA/ADAAA

      F.      Award GONZALES her costs of this action and reasonable attorney's fees, expert fees, pre and post judgment interest;

      G.      Retain jurisdiction over this action to ensure full compliance with the Orders of this Court; and

      H.      Grant GONZALES such other and further relief as this Court deems just and proper.

**GONZALES REQUESTS TRIAL TO A JURY ON ALL ISSUES SO TRIABLE**

DATED this 2nd day of August, 2021.

LAW OFFICE OF RALPH G. TORRES

_/s Ralph G. Torres ....................................
Ralph G. Torres
1801 York Street
Denver, Colorado 80206
Phone: (303) 297-8427; Fax: 720-368-2318
***Attorney for Plaintiff***

Plaintiff's Address:

c/o Law Office of Ralph G. Torres